**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RONALD POST,** | : | **CASE  NO.  1:97 CV 1640** |
| | : | |
| **Petitioner,** | : | |
| | : | **JUDGE LESLEY WELLS** |
| **vs.** | : | |
| | : | |
| **MARGARET BRADSHAW, Warden,** | : | <u>**MEMORANDUM OF OPINION**</u> |
| | : | <u>**AND ORDER**</u> |
| **Respondent.** | : | |

Before the Court is Petitioner Ronald Post's Motion for Relief From Judgment Under Fed. R. Civ. P. 60(b)(6) and Motion for Stay of Execution Pending Disposition of Petitioner's Motion for Relief from Judgment Under Fed. R. Civ. P. 60(b)(6), filed on September 14, 2012.  (ECF Nos. 172 and 173, respectively.)  Respondent Warden Margaret Bradshaw filed a Memorandum in Opposition to both motions on September 24, 2012. (ECF Nos. 180 and 181, respectively.)  Petitioner replied to her memoranda on October 22, 2012.  (ECF Nos. 185 and 186, respectively.)  For the following reasons, Petitioner's motions are denied.

**I.      Relevant Background**

Mr. Post was convicted by a three-judge panel for the aggravated murder of hotel clerk Helen Vantz, committed during a robbery of the Slumber Inn in Elyria, Ohio, in the

early morning hours of December 15, 1983.[1]

Mr. Post originally plead not guilty, but changed his plea to no contest once the trial court ruled that evidence of an alleged confession Mr. Post had made about the crime to a polygraph examiner, Robert Holmok, was admissible. Mr. Post's counsel had retained Mr. Holmok as a defense expert. In addition to his polygraph examination business, Mr. Holmok was a detective for the Lakewood Police Department, in an adjacent county. Mr. Holmok interviewed Mr. Post in the Lorain County jail, while preparing to give him a polygraph test. No one else was present. During this interview, Mr. Holmok contends that Mr. Post confessed to the robbery and murder, and signed the following statement: "The following statement is only to be given to my attorney Ernie Hume & is not to be admitted in court against me. I did the robbery of the Slumber Inn & shot the clerk, Helen." The prosecutor called Mr. Holmok some time after this interview and asked if Mr. Post had confessed, but Mr. Holmok refused to divulge that information. Nevertheless, the State added Mr. Holmok to its witness list.

In addition, a jailhouse informant, Richard Slusher, claimed that Mr. Post had confessed to him about his involvement in the murder and told him about his confession to Mr. Holmok. After conducting a hearing on the matter, the trial court ruled that the written confession and Mr. Holmok's testimony were admissible because Mr. Post's disclosure to Mr. Slusher waived any attorney-client privilege.

At the plea hearing, Mr. Post waived his right to a jury trial, agreed to proceed

---

[1]     The facts of this case are more fully set forth in *State v. Post*, 32 Ohio St. 3d 380, 513 N.E.2d 754 (Ohio 1987), and this Court's Memorandum of Opinion and Order, dated May 23, 2003 (ECF No. 125).

2

before a three-judge panel, and changed his plea to no contest, pursuant to an agreement

with the State that he would be permitted to change his previously submitted motion in

limine — to prevent the prosecution from using the Holmok evidence — to a motion to

suppress.[2]  Mr. Post's counsel hoped that, inasmuch as the evidence against Mr. Post was

substantial and there were no statutory mitigating factors Mr. Post could present to the

court, the court might at least consider the no contest plea in mitigation.  Mr. Post had

rejected a plea agreement the State had offered him, and his counsel had recommended,

which, in return for his plea of guilty, Mr. Post would have been given a life sentence.

The court, after interviewing Mr. Post to determine whether his plea was knowing,

intelligent, and voluntary, accepted the no-contest plea.  The prosecutor then read a

statement of the facts into the record.  The statement explained that Ralph Hall and Jeff

Hoffner were with Mr. Post the night of the crimes and had discussed robbing the Slumber

Inn with Mr. Post; that the murder weapon belonged to Mr. Hall; and that after the murder

Mr. Post told Mr. Hall and his wife about the murder and gave the gun to Mr. Hall to

dispose of it.  It also stated that Mr. Post confessed to the murder to two Elyria police

detectives, James Harsh, David Thacker and John Thompson.  Mr. Post's counsel objected

to the statement of facts only on the ground that it omitted any reference to the trial court's

ruling on the admissibility of the Holmok confession.  Mr. Post's counsel stated to the

court that Mr. Post did not "agree or concur" with the prosecution's statement of the facts,

but did not present any evidence at the hearing to refute or contradict it.  The court found

---

[2]      The court permitted defense counsel to make an oral motion to suppress Mr.
       Post's statements to Mr. Holmok at the hearing, which the court then denied.

3

Mr. Post guilty on all counts.  (*See* ECF No. 23, Ex. 1.)

On March 12, 1985, the three-judge panel heard evidence of the aggravating  and mitigating factors and imposed sentence.  Among the evidence the panel considered were the probation department's pre-sentence report ("PSR") and supplemental PSR, which provided a detailed account of the murder, the events afterward, and the police investigation.  It recounted witnesses' statements to police concerning confessions Mr. Post allegedly made to them, including those of James Harsh and David Thacker, who the police wired so that they could tape his conversations with Mr. Post.  Specifically, the PSR stated, "[a]ccording to the Victim/Witness Administrator, William D. Bowdler of the Lorain County Prosecutor's Office, Post admitted during this conversation [with Thacker] that he had murdered Helen Vantz."  The PSR also summarized police interviews of Ralph Hall, noting that he had given the police the gun that proved to be the murder weapon and that he told the police how Mr. Post had tried to burn Mrs. Vantz's bag in a drum and where they could find the drum, in which the police later found the victim's belongings.  (ECF No. 24, Ex. I, A-83-A-97.)

The panel found that the State had proved one aggravating circumstance, that Mr. Post was the principal offender and had committed a murder while committing an aggravated robbery and in possession of a firearm.  It considered Mr. Post's no-contest plea and found that it failed as an act of contrition.  Finding that there were no other mitigating circumstances, the court imposed the death sentence.  (ECF No. 23, Ex. 2.)

The conviction and sentence were left undisturbed by direct appeal and state post-conviction proceedings.  In those appeals, Mr. Post asserted numerous claims relating to

4

the Holmok and Slusher confessions.  He argued, for instance, that the trial court violated

his attorney-client privilege by ruling the Holmok confession admissible; that the State

improperly used Mr. Slusher to elicit information, and withheld exculpatory impeachment

evidence regarding Mr. Slusher's role as a police informant; and that his trial counsel were

ineffective for hiring Mr. Holmok, for not suppressing Mr. Slusher's statement, and for

leaking the information to the prosecution.[3]  Mr. Post also vigorously attacked his trial

counsel for advising him to plead no contest.  The courts resoundingly rejected these

arguments, often emphasizing that given the overwhelming evidence of Mr. Post's guilt,

the existence of these confessions in the record did not prejudice him.  For example, on

post-conviction review, the trial court concluded, "The record is quite clear that as a result

of the Petitioner's confession to various people, trial counsel were faced with an uphill

battle, at best, and the chances of the defense prevailing at trial were bleak."  (ECF No. 26,

Ex. NN, A-7-A-8.)  The court of appeals agreed, stating, "Post had virtually no chance of

prevailing at trial because the state had evidence that he had confessed his guilt to

numerous individuals."  (ECF No. 27, Ex. RR, 5.)

Furthermore, Mr. Post never contested the fact that Mr. Post confessed to Holmok

and Slusher, or to anyone else; rather, he attacked the confessions purely on legal grounds,

arguing essentially that if the Slusher confession had not been improperly obtained and the

Holmok confession ruled admissible, he would not have plead no contest and waived his

right to a jury trial.  As the Ohio Supreme Court noted,

---

[3]        (*See, e.g.*, ECF No. 24, Ex. D, Ex. I; ECF No. 25, Ex. T, Ex. W, Ex. BB, ¶ 29;
        ECF No. 26, Ex. JJ; ECF No. 27, Ex. UU.)

We further note that the statement of facts submitted to the court, subsequent to appellant's no contest plea, did not refer to the confession made to Holmok.  The Holmok evidence was included in the record upon the insistence of appellant's counsel for the purposes of appeal.  Moreover, the statement of facts revealed that appellant confessed to several persons that he murdered Vantz.  Appellant made no objection to the inclusion of these admissions in the record nor did he contest the verity of those statements.

*State v. Post*, 32 Ohio St. 3d 380, 386, 513 N.E.2d 754, 761 (Ohio 1987).  Indeed, at a hearing held on October 3, 1989, relating to Mr. Post's post-conviction claim of ineffective assistance of counsel, one of Mr. Post's trial counsel acknowledged the veracity and strength of her client's confessions.  Lynett McGough testified:

> Q:     What kind of case do you think the State had against your client, your former client, Mr. Post?
>
> A:     I think the State's case was very, very strong.
>
> Q:     Why was that?
>
> A:     Well, there were a number of reasons.
>             First, there was a great deal of circumstantial evidence.  I had some discussion not with Ralph, or Benny Holmok, but with Attorney Robert Gray, who represented the [Halls].  The State had the smoking gun, if you will.
>             Additionally, there were a number of statements that Ron had made to a number of people.  Statements to the [Halls], statements to Slusher, statements by Ron Martinek, the Holmok statement.  Again, the motion to suppress had been overruled, so we knew that Holmok was going to testify, and quite frankly, Mr. Rosenbaum, there were a couple of statements Mr. Post made to others that you didn't have.
>
> Q:     When you say statements, do you mean confessions?
>
> *  *  *
>
> A:     That's true.
>
> Q:     Were you aware as defense counsel that defendant had admitted guilt

6

to quite a few people?

A:   I knew defendant had made statements and we had copies of the statements, or we had the transcripts of the statements.  We had been provided with lengthy discovery.  We had an opportunity to confront Mr. Post with those statements.

(ECF No. 23, Ex. 4, 60-61.)

In 1997, Mr. Post sought federal habeas relief in this Court, raising thirteen claims, including similar claims relating to the Holmok and Slusher confessions that he had made in his state court appeals, such as ineffective assistance of counsel, suppression of exculpatory evidence, violation of attorney-client privileged communications, and the improper use of a police informant.  (ECF No. 16.)  This Court denied Mr. Post's habeas petition and dismissed it with prejudice on May 23, 2003.  (ECF No. 125.)  In denying his ineffective-assistance claim, it concluded,

> Given the substantial evidence of his guilt, it is unlikely that Mr. Post would have elected to proceed to a jury trial.  The PSR discussed Mr. Posts's confessions to James Harsh, David Thacker, Sally Thacker, and John Thompson. . . .  Some of these confessions were taped by the police. . . . The record also includes Mr. Post's confessions to Mr. Holmok and to Mr. Slusher. . . .  The police were in possession of the murder weapon. . . .  After Ralph Hall told the police that Mr. Post burned Mrs. Vantz's handbag in a 50-gallon drum, the police located the drum, which contained remnants of a handbag and a nail polish bottle of the type used by Mrs. Vantz. . . .  Mr. Duff described the case as "a dead bang loser" and "relatively hopeless or bleak" because Mr. Post "[c]onfessed to a lot of people.". . .  Similarly, Ms. McGough expressed her opinion that the State's case was "very, very strong" because of Mr. Post's confessions to several individuals. . . .  At the mitigation hearing, Mr. Post himself apologized for his "involvement in the death of Mrs. Helen Vantz.". . .  Furthermore, the defense was aware of an audio tape of Mr. Post negotiating with someone over the telephone to kill a witness. . . .  Mr. Slusher claimed that Mr. Post offered him money and a motorcycle to kill Ralph Hall because he could place Mr. Post at the Slumber Inn on the night of the murder.  . . .

(ECF No. 125, 116-17 (internal citations omitted).)

7

Mr. Post filed a Rule 60(b)(6) motion for partial relief from the judgment denying habeas relief on July 30, 2004, on the ground that his counsel had failed to conduct discovery that the Court had permitted.  (ECF No. 139.)  This Court issued an order on September 14, 2004, finding that counsel's failure to pursue discovery was "inexcusable neglect" cognizable under Rule 60(b)(6), and stating its intention to grant the motion. (ECF No. 145.)  Mr. Post's attorneys then filed a motion for remand in the Sixth Circuit. The Sixth Circuit held that Mr. Post's motion was in fact a second or successive habeas petition barred by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *Post v. Bradshaw*, 422 F.3d 419 (6th Cir. 2005).

On June 2, 2010, Mr. Post filed a motion in this Court to expand the record.  (ECF No. 158.)  Mr. Post requested the admission of a tape and transcripts of a recorded conversation between him and David Thacker, among others.  He argued that the transcripts should have been included in the record because they contradict information in the PSR, which the trial court relied upon in Mr. Post's sentencing and later courts relied upon in his appeals.  He claimed the tapes demonstrate that although Mr. Post discussed his participation in the robbery in general with Mr. Thacker, he did not expressly confess that he committed the murder.  This Court ruled on August 13, 2010, that "[b]ecause [it] relied on the mistaken pre-sentence report when issuing its Memorandum of Opinion and Order, it finds the transcripts to be material and permits Mr. Post to supplement the record, even at this late juncture of his appeals, to create a complete record and in the interests of justice." (ECF No. 161, 3.)

The Sixth Circuit affirmed this Court's denial of Mr. Post's habeas petition on

September 13, 2010, again referencing the substantial evidence of his guilt, including the alleged confessions. It concluded, "Post's counsel were between a rock and a hard place in determining the best way to spare him a death sentence, given the overwhelming evidence of his guilt, his numerous confessions, and his refusal to plead guilty." *Post v. Bradshaw*, 621 F.3d 406, 418 (6th Cir. 2010). In its opinion, the court noted that the Thacker transcripts could not be considered on appeal because Rule 10(e) of the Federal Rules of Appellate Procedure cannot be used to introduce new evidence that was not before the district court. *Id.* at 411. The court added, "However, our review of the transcripts makes it clear that they are also completely immaterial, and we mention them only to note that we do not base our decision here on any alleged confession by Post to Thacker." *Id.* at n.1.

The Sixth Circuit denied Mr. Post's request for a rehearing, and the United States Supreme Court denied Mr. Post's petition for writ of *certiorari* on May 25, 2011. *Post v. Bradshaw*, – U.S. –, 131 S. Ct. 2902 (2011). On October 25, 2011, the Ohio Supreme Court set Mr. Post's execution date for January 16, 2013.

On May 22, 2012, Mr. Post again filed a motion with the Sixth Circuit to recall the mandate. The court denied the motion on June 12, 2012. (ECF No. 171.) Mr. Post filed a petition for writ of *certiorari* on September 10, 2012.

Mr. Post filed the instant Rule 60(b) motion on September 14, 2012.[4] He argues that this Court's reliance on certain of his alleged confessions to the murder in denying him habeas relief was misplaced and thus a "defect in the integrity of the federal habeas

---

[4]     Mr. Post also filed a new Petition for Writ of Habeas Corpus on that date, which this Court will address in a separate Order. (ECF No. 174.)

9

proceedings."  The essence of his claim is that, "[a]lthough Post admitted to some

involvement in the robbery, he did not confess sole involvement in Vantz's murder to

'several individuals,'" as represented in this Court's Order.  (ECF No. 172, 1.)  Mr. Post

submits to the Court transcripts of recorded conversations between Mr. Post and

Mr.Thacker, and police interviews of Mr. Thacker, Mr. Harsh, Mr. Hall, and Mr. Hoffner.

(ECF Nos. 172-1 - 172-8.)  He states that his habeas counsel discovered these transcripts in

June 2010 in Mr. Post's file while preparing for oral argument in the Sixth Circuit.  (ECF

No. 172, 7.)  Mr. Post now asks this Court to "reevaluate" his habeas claims based on an

accurate record.  (*Id*. at 19.)

Mr. Post also requests that this Court stay his execution.  He bases this request on

his pending Rule 60(b) motion, as well as the United States Supreme Court's review of

*Ballentine v. Thaler*, which he argues presents similar issues to those in his motion.  (ECF

No. 173.)

**II.      Analysis**

**A.      Rule 60(b) and Section 2244(b)**

Rule 60(b) of the Federal Rules of Civil Procedure allows a party to seek relief

from a final judgment, and request reopening of the case, under a limited set of

circumstances, including fraud, mistake, and newly discovered evidence.  Mr. Post bases

his motion on Rule 60(b)(6), a catchall provision that provides relief for any "other reason

that justifies relief."  Subsection (b)(6) is properly evoked only in "exceptional or

extraordinary circumstances" not specifically addressed by the first five numbered clauses

of the Rule.  *Hopper v. Euclid Manor Nursing Home, Inc*., 867 F.2d 291, 294 (6th Cir.

10

1989).  Courts, therefore, must employ Rule 60(b)(6) "only in 'unusual and extreme

situations where principles of equity *mandate* relief.'"  *Blue Diamond Coal Co. v. Trustees

of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Olle v.

Henry & Wright Corp*., 910 F.2d 357, 365 (6th Cir. 1990) (emphasis original)).

　　　Rule 60(b) applies in habeas corpus proceedings only "to the extent that [it is] not

inconsistent with" applicable federal statutes and rules.  28 U.S.C. § 2254 Rule 11.  One

possible conflict that courts have examined is whether by filing a Rule 60(b) motion, a

habeas petitioner is in fact filing a "second and successive" petition governed, and in most

cases barred from consideration, by AEPDA's Section 2244(b).

　　　Under the gatekeeping provisions of Section 2244(b), a claim presented in a

"second or successive" habeas application that was previously presented in a federal

habeas petition must be dismissed.  28 U.S.C. § 2244(b)(1).  Claims that were not

previously presented in a "second or successive" petition also must be dismissed unless

they rely either on a new and retroactive rule of constitutional law or new facts showing a

high probability of actual innocence.  28 U.S.C. § 2244(b)(2).  If a filing is determined to

be a "second or successive" application, a petitioner must "move in the appropriate court of

appeals for an order authorizing the district court to consider the application."  28 U.S.C. §

2244(b)(3)(A).  If a district court finds a petition to be "second or successive," the court

should transfer it to the Sixth Circuit pursuant to 28 U.S.C. § 1631 for a determination of

whether it should be authorized, rather than dismiss it outright.  *In re Sims,* 111 F.3d 45, 47

(6th Cir. 1997).  The court of appeals then may authorize the filing of the successive

application "only if it determines that the application makes a prima facie showing that the

11

application satisfies the requirements of this subsection." *In re Bowling*, 422 F.3d 434, 436 (6th Cir. 2005).

Thus, a threshold issue for this Court is whether Mr. Post's motion is properly advanced under Rule 60(b)(6), in which case this Court has jurisdiction to decide its merits, or is a second and successive petition subject to the requirements of 28 U.S.C. § 2244(b), in which case this Court does not. *See In re Smith*, 690 F.3d 809, 809 (6th Cir. 2012) (ruling that district courts should determine whether a numerically second habeas petition is "second or successive" within the meaning of Section 2244(b)).

The United States Supreme Court addressed the interplay of Rule 60(b) and Section 2244(b) in *Gonzalez v. Crosby*, 545 U.S. 524 (2005).  In that case, the Court held that Rule 60(b) "has an unquestionably valid role to play in habeas cases," but only when used to attack "not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Id.* at 533-34.  The Court explained that "for purposes of § 2244(b) an 'application' for habeas relief is a filing that contains one or more 'claims.'" *Id*. at 530.  And such "claims," as contemplated by AEDPA, represent "an asserted federal basis for relief from a state court's judgment of conviction." *Id.*  Thus, Rule 60(b) motions are appropriate "when no 'claim' is presented" and "neither the motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction . . . ."[5]  *Id*. at 533.

---

[5]        The *Gonzalez* Court held that the Rule 60(b) motion at issue in that case was proper, since it alleged that the federal courts misapplied the statute of limitations set out in Section 2244(d), which was a defect in the proceeding rather than a

The Sixth Circuit recently observed that Rule 60(b)(6) "confers upon the district court a broad equitable power to 'do justice.'" in habeas actions.  *Johnson v. Bell*, 605 F.3d 333, 336 (6th Cir. 2010).  It explained, "Particularly in light of the approach taken by [the] Supreme Court in *Gonzalez*, Rule 60(b) represents the sole authority, short of a successive application approved by this court , under which a district court may entertain a challenge to a prior denial of habeas relief." *Id*.  Nevertheless, it stated, Rule 60(b) "continues to have limited viability in the habeas context." *Id.* at 335.  Indeed, relief under Rule 60(b) has always been "circumscribed by the interests in finality and the termination of litigation." *Park West Galleries, Inc. v. Hochman*, 692 F.3d 539, 545 (6th Cir. 2012) (citing *Ford Motor Co. v. Mustangs Unlimited*, 487 F.3d 465, 468 (6th Cir. 2007)).

The *Gonzalez* Court provided clear instructions for lower courts on how to apply its holding.  It stated:

> In most cases, determining whether a Rule 60(b) motion advances one or more "claims" will be relatively simple.  A motion that seeks to add a new ground for relief . . . will of course qualify.  A motion can also be said to bring a "claim" if it attacks the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief.  This is not the case, however, when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim *on the merits*, but some defect in the integrity of the federal habeas proceedings.

*Gonzales*, 545 U.S. at 531-32 (footnotes omitted) (emphasis original).  The Court further explained,

> The term "on the merits" has multiple usages.  We refer here to a determination that there exist or do not exist grounds entitling a petitioner to

claim.  *Gonzalez*, 545 U.S. at 533.

13

> habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d).  When a movant
> asserts one of those grounds (or asserts that a previous ruling regarding one
> of those grounds was in error) he is making a habeas corpus claim.  He is
> not doing so when he merely asserts that a previous ruling which precluded
> a merits determination was in error– for example, a denial for such reasons
> as failure to exhaust, procedural default, or statute-of-limitations bar.

*Id*. at 532 n.4 (citation omitted).

The *Gonzales* Court specifically noted that a Rule 60(b) motion is in effect a successor petition if it "seek[s] leave to present 'newly discovered evidence' in support of a claim previously denied," *id*. at 2647 (internal citation omitted); and that "an attack based on the movant's own conduct, or his habeas counsel's omissions, . . . ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably."  *Id*. at 2648 n.5 (internal citation omitted).

The Sixth Circuit already has applied *Gonzalez* to a Rule 60(b) motion that Mr. Post filed in this case, and determined that it was a second or successive petition.  *Post v. Bradshaw*, 422 F.3d 419 (6th Cir. 2005).  In that motion, Mr. Post asked for partial relief from this Court's judgment denying his habeas petition on the ground that his habeas counsel had failed to pursue discovery.  The court held that the motion was "clearly" a successive petition because it "seeks to advance, through new discovery, claims that the district court previously considered and dismissed on substantive, constitutional grounds: i.e., on the merits."  *Id*. at 424.  It explained,

> It makes no difference that the motion itself does not attack the district
> court's substantive analysis of those claims but, instead, purports to raise a
> defect in the integrity of the habeas proceedings, namely his counsel's
> failure– after obtaining leave to pursue discovery–actually to undertake that
> discovery; all that matters is that Post is 'seek[ing] vindication of" or
> "advanc[ing]" a claim by taking steps that lead inexorably to a merits-based
> attack on the prior dismissal of his habeas petition.

14

*Id.* at 424-25 (citing *Gonsalez,* 125 S. Ct. at 2647-48).

Similarly, in *Brooks v. Bobby*, 660 F.3d 959 (6th Cir. 2011), the Sixth Circuit denied

a Rule 60(b) motion based on habeas counsel's failure to present all possible claims and

conflict of interest as a second and successive petition.  The court opined,

> Neither of Brooks' ineffective-assistance claims amounts to fraud on the
> court.  And the claims, as presented, do not undermine the "integrity" of the
> first federal habeas proceedings. . . . [This claim] is a plain-vanilla
> successive petition designed to do nothing more than attack his earlier
> counsel's omissions. . . .  If the successive-petition bar does not limit this
> theory, it limits nothing.

*Id.* at 963.

In the Rule 60(b) motion now at issue, Mr. Post argues that under *Gonsalez*, this

Court's "inaccurate fact-finding" involving certain of his alleged confessions is an

"actionable defect in the integrity of these proceedings," and not a "new claim" or "attack

on the Court's previous decision denying habeas relief," therefore properly falling under

Rule 60(b).  (ECF No. 172, 9.)  He claims that the overlooked transcripts of his

conversations with Mr. Thacker and of the police's interview with James Harsh show that

"he did not confess the murder to several people," thereby undermining this Court's factual

findings.  He also asserts that the transcripts of the police interviews with Ralph Hall and

Jeff Hoffner likewise contradict the prosecution's statement of facts to the three-judge

panel and resulted in an inaccurate habeas record.  (*Id*. at 3-5.)  Respondent counters that

Mr. Post's motion "is a substantive attack on the Court's previous denial of Post's alleged

grounds in support of relief, as opposed to a claim that the Court erred on a procedural

matter that *precluded* the Court from considering the merits of the alleged grounds."  (ECF

No. 180, 6.)  Mr. Post in turn replied that "his motion challenges a defective habeas

15

proceeding occasioned by a procedural default . . . of the motion exhibits by state post-conviction counsel[, which] precluded this Court from fairly adjudicating nearly the entire habeas petition."  (ECF No. 185,  4.)

The Court agrees with Respondent, and finds little that distinguishes this motion from Mr. Post's previous Rule 60(b) motion, which the Sixth Circuit held was "clearly" a second or successive petition.  Mr. Post's motion seeks to advance claims, through new evidence in the record, that this Court previously has considered and dismissed on the merits.  Despite Mr. Post's strained characterization of the absence of  these transcripts from the record as "a procedural default of an accurate record," his motion is in fact premised on his post-conviction and habeas counsel's failure to place them in the record, which "ordinarily does not go the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably."  *Gonzalez,* 125 S. Ct. at 2648 n.5.  It also "seek[s] leave to present 'newly discovered evidence' in support of a claim previously denied," which the *Gonzalez* Court expressly found to be the function of a habeas corpus claim.  *Id.* at 2647.

Mr. Post cites *Rodriguez v. Mitchell*, 252 F.3d 191 (2nd Cir. 2001), as support.  In that case, the Second Circuit held that a habeas petitioner's Rule 60(b) motion based on his trial counsel's fraudulent representations in a letter to the habeas court should not be construed as a successive petition.  But *Rodriguez* does not help Mr. Post.  First, the Second Circuit was in the minority among circuit courts by holding in *Rodriguez* that Rule 60(b) motions categorically are not successive petitions under Section 2244(b).  *Id.* at 200.  As explained above, the Supreme Court did not adopt that rule in *Gonzalez.*  Further,

16

*Rodriguez* involved fraud in the habeas proceeding, and the *Gonzalez* Court specifically cited fraud, and that case in particular, as a clear example of a "defect in the integrity of the proceedings." *Gonzalez,* 125 S. Ct. at 2648 n5.  Here, the "*inaccurate record*" of which Mr. Post complains was not caused by a defect, procedural or otherwise, in this Court's proceedings; rather, it was caused by Mr. Post's own counsel's failure to create *a more favorable record*, which goes to the very heart of his claims and this Court's review of them.

As the Sixth Circuit already has ruled in this case once, "all that matters is that Post is 'seek[ing] vindication of' or "advanc[ing]" a claim by taking steps that lead inexorably to a merits-based attack on the prior dismissal of his habeas petition."  *Post*, 422 F.3d at 424-25 (citing *Gonzalez,* 125 S. Ct. at 2647-48).  Mr. Post's motion is a second and successive petition and must be transferred to the Sixth Circuit for a determination of whether it meets the requirements of Section 2244(b)(2).

### B.       Rule 60(b) and Section 2254(i)

A second threshold issue is whether Mr. Post's motion is barred by AEPDA's Section 2254(i).  That provision states:  "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).  The Sixth Circuit denied Mr. Post's previous Rule 60(b) motion on this ground as well.  *Post*, 422 F.3d at 423.

In *Post*, the court found Section 2254(i) "clear" and "expansive in its prohibition." *Id*. at 423.  It held that the provision "expressly bars relief grounded on claims of

17

incompetent or ineffective counsel in federal post-conviction proceedings. . . .  And it bars

'relief,' not simply particular kinds of relief, such as a writ of habeas corpus."  *Id*. (citations

omitted).  Section 2254(i) therefore conflicts with Rule 60(b), the court reasoned, and

because the federal civil rules apply only to the extent they do not conflict with AEDPA

provisions, "[t]he bringing of such claims is therefore not a valid role for Rule 60(b) . . . ."

*Id*. at 424 (citing *Gonzalez,* 545 U.S. at 529).  The court thus concluded that the relief Mr.

Post sought was "explicitly barred by the provisions of § 2254(i)."  *Id.  See also Brooks*,

660 F.3d at 963 ("Our court, not surprisingly, has construed [Section 2254(i)] to mean what

it says:  to bar a Rule 60(b) motion based on the ineffectiveness of habeas counsel.").

It is clear that Mr. Post premises his motion on the ineffective assistance of his

post-conviction and habeas counsel, a claim that is expressly barred under Section 2254(i).

He asserts, for example,

> State post-conviction counsel violated their essential duties to Post, which
> ultimately led to this inaccurate record.  Federal habeas counsel then
> violated their essential duties to Post, when they failed to identify and
> correct this inaccurate record.  It is that inaccurate record that caused a
> "defect in the integrity of the proceedings."

(ECF No. 172,10.)

To avoid the Section 2254(i) bar, Mr. Post points to the recent Supreme Court

decisions in *Martinez v. Ryan*, – U.S. – , 132 S. Ct. 1309 (2012), *Maples v. Thomas*, – U.S.

– , 132 S. Ct. 912 (2012), and *Martel v. Clair*, – U.S. – , 132 S. Ct. 1276 (2012), for

support.  In *Martinez*, the Supreme Court held that the "[i]nadequate assistance of counsel

at initial-review collateral proceedings may establish cause for a prisoner's procedural

default of a claim of ineffective assistance at trial."  *Martinez*, 132 S. Ct. at 1315.  In

18

*Maples*, the Court held that a petitioner's abandonment by his attorneys constituted an "extraordinary circumstance[] beyond his control" that justified lifting the state procedural bar to his federal petition.  *Maples*, 132 S. Ct. at 924, 927.  And in *Martel*, the Court held that when evaluating motions to substitute counsel in capital cases under 18 U.S.C. § 3599, courts should employ the same "interests of justice" standard that applies in non-capital cases.  *Martel*, 132 S. Ct. at 1284.

Mr. Post claims these cases "corrected" the Sixth Circuit's "erroneous" and "overly broad interpretation" of Section 2254(i).  (ECF No. 172, 11.)  He argues that his Rule 60(b) request is not based on a prohibited ineffective-assistance claim, but instead is premised on his counsel's failure to place the transcripts in the record as "cause" for the "defaulted" record, a permissible ground under *Martinez*.  (ECF No. 185, 6.)  He also asserts more generally that these cases "clarified that equitable principles can–and should–be considered in the habeas petitioner's favor, even when the issues arise because of collateral counsel's failures."  (ECF No. 172, 11.)

The Court finds, however, that *Martinez*, *Maples*, and *Martel* do not apply to Mr. Post's motion, and do not confer the broad equitable authority upon this Court that Mr. Post suggests.  The Sixth Circuit recently rejected a similar argument in *In re Hartman*, No. 12-4255 (6th Cir. Nov. 8, 2012), and ruled that *Martinez* did not apply to the habeas petitioner's Rule 60(b) motion, but was limited to its narrow holding.  It also noted that the Supreme Court has not determined that *Martinez* announced a new rule that should be retroactively available to cases on collateral review, as required by Section 2244(b)(2)(A).  *See also Brooks*, 660 F.3d at 964 (denying petitioner's request to stay his execution pending

19

Supreme Court's decision in *Martel*, *Martinez*, and *Maples* because those cases had no bearing on his Rule 60(b) motion).

Indeed, the *Martinez* Court was explicit that its holding represents a "limited qualification" to its prior decision *Coleman v. Thompson*, 501 U.S. 722 (1991), in which the Court held that an attorney's negligence in a post-conviction proceeding does not establish cause to excuse procedural default.  *Id*. at 1319.  The Court explained that it created this exception to *Coleman* to acknowledge "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim."  *Id*. at 1318.  It was careful to note the holding's limitations, however, emphasizing that it is an "equitable" rather than a "constitutional" holding.  *Id.*  It stated:

> The rule of *Coleman* governs in all but the limited circumstances recognized here.  The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. . . .  It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Id*. at 1320 (citations omitted).

Thus, although Mr. Post strains to fall within the *Martinez* holding by couching his argument in the language of procedural default, making the novel claim that the transcripts themselves are "defaulted," he is not seeking to establish that his counsel's error constitutes cause to excuse the procedural default of a claim, as in *Martinez*, and that case is inapposite.  Similarly,  *Maples* does not apply because it did concern a procedural bar to

20

the petitioner's habeas petition, which this case does not, and because Mr. Post's counsel's omission is not the type of  "extraordinary" circumstance beyond his control" that was present in that case.  Finally, although the *Martel* Court rejected the respondent's argument that Section 2254(i) prevented a habeas petitioner from seeking new counsel on ineffectiveness grounds, that case does not apply at all to Rule 60(b) motions.

   Despite their equitable groundings, *Martinez*, *Maples*. and *Martel* do not stand for the proposition that if a habeas petitioner's post-conviction or habeas counsel was ineffective, that excuses any failure to meet AEPDA's requirements, or supports reopening a federal habeas case based upon evidence not in the record.  And these cases have no bearing on the Sixth Circuit's interpretation of how Section 2254(i)affects Rule 60(b) motions in *Post* and *Brooks*.  Mr. Post's motion is premised on his post-conviction and habeas counsel's inadequate representation, and is therefore barred by Section 2254(i). *Accord Hill v. Anderson*, Case No. 4:96 CV 00795, 2012 WL 2826973, at **3-4 (N.D. Ohio July 10, 2012); and *Williams v. Mitchell*, Case No. 1:09 CV 2246, 2012 WL 4505181, at * 6 (N.D. Ohio Sept. 28, 2012) (both refusing to extend *Martinez* to excuse post-conviction counsel's failure to develop state-court record and allow discovery).

   **C.     Rule 60(b)**

   Even if Mr. Post's motion was not barred by both Section 2244(b) and Section 2254(i), it would fail, as Mr. Post has not demonstrated the type of "exceptional or extraordinary circumstances" required to justify relief under Rule 60(b).  Mr. Post claims that the transcripts at issue must be included in the record because, as the Court stated in granting Mr. Post's request to expand the record, this Court relied on the mistaken PSR

21

when issuing its Memorandum of Opinion and Order.  After reviewing the transcripts

submitted, however, the Court concludes that, although the PSR did contain a false

statement concerning an alleged confession that Mr. Post made to Mr. Thacker, the

transcripts do not provide sufficient cause to reopen this case.  There was no defect in the

integrity of this Court's proceedings, as Mr. Post asserts.

Mr. Post contends that the transcripts of the police interviews with Mr. Hoffner and

Mr. Hall cast doubt upon the State's theory that Hall and Hoffner were not involved in the

murder.  He claims the transcripts show that Hall had the original idea to rob the Slumber

Inn, and that he sold the murder weapon to Mr. Post and was in possession of it after the

murder.  (ECF No. 172, 3-4.)  In fact, this information is already in the record, and these

transcripts add nothing new.  The facts surrounding Mr. Hall's and Mr. Hoffner's

involvement in the events leading up to and after the murder of Mrs. Vantz were included

in the prosecution's statement of the facts and the PSR.

Mr. Post also contends that the transcripts show that he never confessed to Mr.

Thacker, Mr. Harsh, or Mr. Thompson.  (ECF No. 172, 4-5.)  This argument fails for

several reasons.  First, the fact that the transcripts do not contain evidence of Mr. Post's

confession to Mr. Thacker does not mean that he never confessed to him in other,

unrecorded conversations.  In fact, there is credible, independent evidence that Mr. Post

may have done just that.  The prosecution contended that Mr. Post told two Elyria police

detectives that he told Mr. Thacker that he committed the murder.  The same is true of the

interviews with the police; although the witnesses did not explicitly mention a confession

during those particular interviews, that does not prove that Mr. Post never confessed to

22

them.  Mr. Post's trial counsel, Ms. McGough, testified at a post-conviction hearing that she was aware of many instances in which Mr. Post confessed his crime, had obtained transcripts of the statements during the course of "lengthy discovery," and had discussed them with Mr. Post.

Second, Mr. Post has asserted numerous claims during the course of his appeals related to his alleged confessions to Mr. Holmok and Mr. Slusher, yet he has never disputed the fact that these confessions– or any of the other confessions– did in fact occur. The Ohio Supreme Court noted that Mr. Post "made no objection to the inclusion of these admissions in the record nor did he contest the verity of those statements."  *Post,* 32 Ohio St. 3d at 386, 513 N.E.2d at 761.  Although, as explained above, *Martinez, Maple,* and *Martel* are not applicable to this case, even if they were, the Court finds that Mr. Post's silence for more than twenty years about the truth of these alleged confessions undercuts the strength of Mr. Post's equitable arguments.[6]

Third, even if the Court were to disregard the Thacker, Harsh and Thompson confessions, the evidence of Mr. Post's guilt would still be very strong, and the inclusion of these transcripts in the record would not have led to a different outcome.  As this Court explained in its Memorandum of Opinion and Order, the evidence against Mr. Post involved more than just these particular confessions.  It stated:

> Given the substantial evidence of his guilt, it is unlikely that Mr.

---

[6]     Moreover, a change in decisional law is usually not, by itself, an extraordinary circumstance for purposes of Rule 60(b).  *E.g., Agostini v. Felton*, 521 U.S. 203, 239 (1997); *Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001).

Post would have elected to proceed to a jury trial.  The PSR discussed Mr.
Posts's confessions to James Harsh, David Thacker, Sally Thacker, and
John Thompson. . . .  Some of these confessions were taped by the police.  .
. .  The record also includes Mr. Post's confessions to Mr. Holmok and to
Mr. Slusher. . . .  The police were in possession of the murder weapon. . . .
After Ralph Hall told the police that Mr. Post burned Mrs. Vantz's handbag
in a 50-gallon drum, the police located the drum, which contained remnants
of a handbag and a nail polish bottle of the type used by Mrs. Vantz.  . . .
Mr. Duff described the case as "a dead bang loser" and "relatively hopeless
or bleak" because Mr. Post "[c]onfessed to a lot of people." . . .  Similarly,
Ms. McGough expressed her opinion that the State's case was "very, very
strong" because of Mr. Post's confessions to several individuals. . . .  At the
mitigation hearing, Mr. Post himself apologized for his "involvement in the
death of Mrs. Helen Vantz." . . .  Furthermore, the defense was aware of an
audio tape of Mr. Post negotiating with someone over the telephone to kill a
witness.  . . .  Mr. Slusher claimed that Mr. Post offered him money and a
motorcycle to kill Ralph Hall because he could place Mr. Post at the
Slumber Inn on the night of the murder.  . . .

(ECF No. 125, 116-17 (internal citations omitted).)  The Sixth Circuit, too, found the

Thacker confession "completely immaterial" to its decision affirming this Court's denial of

Mr. Post's petition.[7]  *Post*, 621 F.3d at 411 n.1.

---

[7]      Respondent argues that the Sixth Circuit's statement about the Thacker transcripts
is binding on this Court under the law-of-the-case doctrine.  (ECF No. 180, 9-10.)
The doctrine does not apply to dicta, however, which this comment clearly was.
*See, e.g., Hanover Insur. Co. v. American Eng'g Co.*, 105 F.3d 306, 312 (6th Cir.
1997).

24

**III.     Conclusion**

Accordingly, Mr. Post's Motion for Relief From Judgment Under Fed. R. Civ. P.

60(b)(6) (ECF No. 172) is denied as an attempt to file a second and successive petition, and

the Court will transfer the motion to the Sixth Circuit for a determination of whether it

meets the requirements of Section 2244(b)(2).  Mr. Post's Motion for Stay of Execution

Pending Disposition of Petitioner's Motion for Relief from Judgment Under Fed. R. Civ. P.

60(b)(6) (ECF No. 173) is therefore denied as moot.

IT IS SO ORDERED.


  /s/Lesley Wells                                  
UNITED STATES DISTRICT JUDGE



Dated: 15 November 2012