UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RONALD POST, | : CASE NO. 1:97 CV 1640 |
| Petitioner, | : |
| | : JUDGE LESLEY WELLS |
| vs. | : |
| | : |
| MARGARET BRADSHAW, Warden, | : MEMORANDUM OF OPINION |
| | : AND ORDER |
| Respondent. | : |

Before the Court is Petitioner Ronald Post's Petition for Writ of Habeas Corpus and Motion to Proceed In Forma Pauperis and Motion for Summary Judgment. (ECF Nos. 174, 175, and 194, respectively.) Respondent Warden Margaret Bradshaw filed a Return of Writ. (ECF No. 187.) For the following reasons, Petitioner's Petition for Writ of Habeas Corpus is dismissed, his Motion for Summary Judgment is denied, and his Motion In Forma Pauperis is denied.

I.  **Relevant Background**

Mr. Post was convicted and sentenced to death by a three-judge panel on March 12, 1985, for the aggravated murder of hotel clerk Helen Vantz. The murder was committed during a robbery of the Slumber Inn in Elyria, Ohio, in the early morning hours of December 15, 1983.[1] The conviction and sentence were

---

[1] The facts of this case are more fully set forth in *State v. Post*, 32 Ohio St. 3d 380, 513 N.E.2d 754 (Ohio 1987), and this Court's Memorandum of Opinion and Order, dated May 23, 2003 (ECF No. 125).

left undisturbed by direct appeal and state post-conviction proceedings.

In 1997, Mr. Post sought federal habeas relief in this Court, raising thirteen claims. (ECF No. 16.) His twelfth ground for relief asserted that "Ohio's statutory provisions governing its capital punishment scheme violated his constitutionally guaranteed rights." (ECF No. 84, 114.) As part of this claim, Mr. Post argued that Ohio's lethal injection method of execution "inflects torturous, gratuitous and inhumane pain, suffering and anguish upon the person executed by this means," thereby violating his constitutional protection from cruel and unusual punishment and right to the due process of law. (*Id.* at 171-73.)

This Court denied Mr. Post's habeas petition and dismissed it with prejudice on May 23, 2003. (ECF No. 125.) It specifically addressed his lethal-injection sub-claim, concluding,

> The Sixth Circuit Court of Appeals and the federal district courts within Ohio consistently have upheld the constitutionality of Ohio's death penalty statute. In comprehensive, thorough, and well-reasoned opinions, which are supported by ample United States Supreme Court precedent, these courts have addressed and rejected all but one of Mr. Post's claims, that lethal injection is a cruel and unusual means of execution. Mr. Post does not point to a single American court that has held that death by lethal injection is unconstitutional, and this Court has found no such decision. In fact, federal courts of appeals explicitly have rejected this claim.

(*Id.* at 183 (internal footnotes and citations omitted).) The Court did not issue a Certificate of Appealability as to Mr. Post's twelfth ground for relief, including his lethal-injection sub-claim, finding that it was "not debatable or close to presenting a federal constitutional violation." (*Id.* at 186.)

Mr. Post filed a Rule 60(b)(6) motion for partial relief from the judgment

2

denying habeas relief on July 30, 2004, on grounds unrelated to his lethal-injection claim. (ECF No. 139.) The Sixth Circuit eventually ruled that Mr. Post's motion was in fact a second or successive habeas petition barred by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *Post v. Bradshaw*, 422 F.3d 419 (6th Cir. 2005).

The Sixth Circuit affirmed this Court's denial of Mr. Post's habeas petition on September 13, 2010. *Post v. Bradshaw*, 621 F.3d 406, 418 (6th Cir. 2010). The Sixth Circuit denied Mr. Post's request for a rehearing, and the United States Supreme Court denied Mr. Post's petition for writ of *certiorari* on May 25, 2011. *Post v. Bradshaw*, – U.S. –, 131 S. Ct. 2902 (2011). On October 25, 2011, the Ohio Supreme Court set Mr. Post's execution date for January 16, 2013.

On May 22, 2012, Mr. Post filed a motion with the Sixth Circuit to recall the mandate. The court denied the motion on June 12, 2012. (ECF No. 171.) Mr. Post filed a petition for writ of *certiorari* on September 10, 2012.

Mr. Post filed the instant Petition for Writ of Habeas Corpus on September 14, 2012.[2] (ECF No. 174.) He asserts four claims in his new habeas petition, all challenging Ohio's lethal injection protocol. The first two claims are grounded in the Eighth and Fourteenth Amendments, alleging that both Plan A and Plan B of Ohio's death-penalty protocol "present[] to a reasonable degree of medical

---

[2] Mr. Post also filed a Motion for Relief From Judgment Under Fed. R. Civ. P. 60(b)(6) and Motion for Stay of Execution Pending Disposition of Petitioner's Motion for Relief from Judgment Under Fed. R. Civ. P. 60(b)(6) (ECF Nos. 172 and 173) on that date, which this Court denied on November 15, 2012. (ECF No. 197.)

certainty, a substantial risk of serious physical and psychological pain to him, as well as an execution that will involve a torturous and lingering death." (*Id.* at 11.) This risk arises primarily because Mr. Post weighs more than 480 pounds. Consequently, he argues, intravenous injection under Plan A will not work properly because he has had prior difficulties with vein access, has significant scar tissue on his forearms from a past suicide attempt, and has venous insufficiency in his lower limbs. In addition, intramuscular injection under Plan B is infeasible because the injections most likely will not prove lethal in Mr. Post, as the drugs probably will get deposited in the subcutaneous tissue instead of intramuscle and therefore repeated injections may be required over a significant period of time to become lethal. "Indeed," he argues, "given his unique physical and medical condition there is a substantial risk that *any attempt* to execute him will result in serious physical and psychological pain to him, as well as an execution involving a torturous and lingering death." (*Id.* at 3 (emphasis added).) Mr. Post submits affidavits of two anesthesiologists supporting these claims. (ECF Nos. 174-1 and 190-1.)

Mr. Post's other two claims are grounded in the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. He argues that he will be deprived of the liberty interest created by Ohio's death penalty statute, Ohio Rev. Code § 2949.22(A), which mandates that the death penalty be imposed "quickly and painlessly." His equal protection claim is based on the theory that, first, there is no way to successfully execute Mr. Post quickly and painlessly as required by Ohio law because of his unique medical condition, and any deviation from the protocol is unconstitutional because it would not serve a compelling state interest.

4

The second theory is that Ohio's "death-penalty statute and written policy and the pattern and ongoing practices of non-compliance therewith substantially burden the fundamental rights of the class of persons under an Ohio death sentence . . . without adequate justification . . . ." (ECF No. 174, 28.) Alternatively, he claims that Ohio's protocol, "as written and/or as applied," violates his rights as a "class of one" under the Equal Protection Clause because it "arbitrarily or intentionally treats each condemned inmate differently and that such disparate treatment is not rationally related to a legitimate state interest." (*Id.* at 29.)

Mr. Post also is a party to a suit brought under 42 U.S.C. § 1983 in the District Court for the Southern District of Ohio, entitled *In re Ohio Lethal Injection Litigation*, No. 2:11 CV 01016. He makes essentially the same claims regarding Ohio's lethal injection protocol in that case.

Respondent filed a Return of Writ on October 22, 2012, countering that Mr. Post's petition should be denied on three separate and independent grounds: (1) the claims are not cognizable in habeas corpus because they "specifically attack Oho's current execution policies and procedures, as opposed to generally challenging the State's use of lethal injection as a method of [execution]"; (2) to the extent that the claims constitute a general attack on lethal injection, Mr. Post's petition is a "second and successive" petition barred by 28 U.S.C. § 2244(b); and (3) even if considered, the claims do not merit relief. (ECF No. 187.)

On November 14, 2012, Mr. Post filed a Motion for Summary Judgment on the first, second, and fourth grounds for relief in his petition, arguing that he is entitled to judgment on them in his favor as a matter of law because the State of

5

Ohio cannot execute him in a constitutional manner. (ECF No. 194.)

## II. Analysis

A threshold issue for this Court is whether Mr. Post's motion is a "second in time" petition, properly advanced under AEPDA's Section 2254, in which case this Court has jurisdiction to decide its merits, or is a "second and successive" petition subject to AEDPA's Section 2244(b), in which case this Court is barred from considering it unless it meets certain requirements. *See In re Smith*, 690 F.3d 809, 809 (6th Cir. 2012) (ruling that district courts first should determine whether a numerically second habeas petition is "second or successive" within the meaning of Section 2244(b)).

Under the gatekeeping provisions of Section 2244(b), a claim presented in a "second or successive" habeas application that was previously presented in a federal habeas petition must be dismissed. 28 U.S.C. § 2244(b)(1). Claims that were not previously presented in a "second or successive" petition also must be dismissed unless they rely either on a new and retroactive rule of constitutional law or new facts showing a high probability of actual innocence. 28 U.S.C. § 2244(b)(2). If a filing is determined to be a "second or successive" application, a petitioner must "move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). If a district court finds a petition to be "second or successive," the court may transfer it to the Sixth Circuit pursuant to 28 U.S.C. § 1631 for a determination of whether it should be authorized, rather than dismiss it outright. *See In re Sims*, 111 F.3d 45,

47 (6th Cir. 1997). The court of appeals then may authorize the filing of the successive application "only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." *In re Bowling*, 422 F.3d 434, 436 (6th Cir. 2005).

Whether a petition is "second or successive" within the meaning of Section 2244(b) does not depend merely on whether the petitioner filed a prior habeas petition, or, stated differently, whether the petition is "second in time." The phrase "second or successive" is instead a "term of art" that is "given substance" by the Supreme Court's habeas cases. *Slack v. McDaniel*, 529 U.S. 473, 486 (2000). And, as the Sixth Circuit has explained, "in a series of post-AEDPA cases, the Supreme Court has confirmed that a numerically second petition is not properly termed 'second or successive' to the extent it asserts claims whose predicates arose after the filing of the original petition." *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010).

Mr. Post argues that his petition is not successive because he "could not have raised this claim in his earlier petition because the execution was not imminent and his physical and medical condition have not been stable in relation to an execution date." (ECF No. 174, 34.) He cites as support, among other cases, *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998), and *Panetti v. Quarterman*, 551 U.S. 930 (2007), in which the United States Supreme Court held that the statutory bar on second or successive applications does not apply to *Ford*-based incompetency claims filed after the state has obtained an execution

6

warrant. *Martinez -Villareal*, 523 U.S. at 640 (as to identical, previously filed claim); *Panetti*, 551 U.S. at 947 (as to claim that had not been presented in an earlier petition). This exception is based on the ripeness doctrine, permitting a petitioner to file what is functionally a first petition as to a previously unripe claim that becomes ripe only when execution is imminent, since an individual's competency to be executed cannot properly be assessed until that time. See *Martinez -Villareal*, 523 U.S. at 645 ("Respondent brought his claim in a timely fashion, and it has not been ripe for resolution until now."); *Panetti*, 551 U.S. at 945 ("We conclude, in accord with this precedent, that Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented here: a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe.").

Respondent argues that Mr. Post's argument fails because, in order to fall within the parameter of habeas, Mr. Post is making a general challenge to Ohio's lethal-injection method of execution, with no acceptable alternative possible, and his claims therefore are not predicated either on any particular written policy or his actual physical or mental condition at the time of execution. (ECF No. 187, 11.)

The Court agrees with Respondent and finds that Mr. Post's petition is in effect a second or successive petition. The Sixth Circuit has not considered whether the ripeness theory adopted in *Martinez -Villareal* and *Panetti* applies to numerically second habeas petitions raising lethal-injection claims, such as Mr. Post's. It has, however, addressed the issue in two cases brought under 42

7

U.S.C. § 1983 challenging Ohio's lethal-injection protocols: *Alley v. Little*, 186 Fed. Appx. 604 (6th Cir. 2006), and *Cooey II v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). In both of these cases, the court rejected the inmates' arguments that, under *Martinez -Villareal*, their lethal-injection claims did not become ripe until an execution date was imminent. The court explained in *Alley*,

> Alley's brief cites *Stewart v. Martinez -Villareal* . . . as prohibiting courts from considering challenges such as the one in our case before a petitioner's execution reaches imminence. We reject this reading of this precedent. In that case, unlike in ours, the defendant's claim under *Ford v. Wainwright* . . . had originally been dismissed with prejudice. The Supreme Court's ruling merely allowed the claim to proceed in a habeas petition at a later date. The Court noted that the lower courts had specifically left open the possibility that the defendant's *Ford* claim could proceed in a future filing. . . . No such procedural history informs the posture of the § 1983 petition in our case.

*Alley*, 186 Fed. Appx. at 607. The court continued,

> Moreover, we note that claims involving mental competency are inherently different from the § 1983 petition before us in at least one respect: mental competency is subject to variance over time. It is indeed possible that last-minute first-instance *Ford* petitions could be justified by a change in a defendant's mental health.

*Id*. The court dismissed the petition in *Alley* on grounds other than untimeliness, however, noting that "[e]xtreme untimeliness is a sufficient but not necessarily compelling factor when deciding how to dispose of a § 1983 challenge to lethal injection." *Id*.

In *Cooey II*, the Sixth Circuit repeated its rejection in *Alley* of a *Martinez -Villareal* ripeness argument, adding:

> In contrast, while the lethal injection protocol in this case is subject to change, there was no evidence, until recently, that the

8

> protocol had ever been changed. And, furthermore, the recent changes do not relate to Cooey's core complaints.

*Cooey II*, 479 F.3d at 423. The court reversed the district court's ruling that Cooey's method-of-execution claim accrued when his execution became imminent and he knew or had reason to know of the facts that gave rise to his specific method-of-execution challenge and therefore was filed within the statute of limitations. The court held instead that "since the 'date' the lethal injection protocol is imposed is infeasible, it stands to reason that the next most appropriate accrual date should mirror that found in the AEDPA: upon conclusion of direct review in the state court or the expiration of time for seeking such review," as provided for in 28 U.S.C. § 2244(d)(1)(A). *Id.* at 421-22. It noted that "[a]ll of the same concerns articulated by the Supreme Court as reflected in the AEDPA are relevant here. Like federal habeas actions, a § 1983 method-of-execution challenge 'implicates values beyond the concerns of the parties.'" *Id.* at 422 (citations omitted).

The Court finds that Mr. Post's petition is a second and successive petition governed by Section 2244(b). Mr. Post's "core complaint" in his new petition is that Ohio's lethal-injection method of execution is cruel and unusual punishment and violates due process, and that there is no acceptable alternative. He already raised this claim in his original habeas petition, which this Court considered and rejected, and over which he did not attempt to obtain a COA from the court of appeals. Mr. Post, therefore, is not asserting "claims whose predicates arose after the filing of the original petition," but is relitigating his previous claims, albeit in a

9

more specific, individualized way.[3] He has not demonstrated in his new petition that his medical condition has changed so significantly, or that Ohio's new lethal-injection procedures have changed so radically, since he filed his first petition in 1997 that his original core complaints are transformed into something new. His claims, in their essence, remain the same.

---

[3] To the extent that Mr. Post asserts specific challenges to particular aspects of Ohio's lethal-injection protocol, particularly those that may adversely affect him because of his obesity and other medical problems, those claims may not properly sound in habeas corpus and could be dismissed on that basis. The law on this issue, however, is unclear. It is now established that method-of-execution claims can be asserted through either Section 1983 or Section 2254. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Hill v. McDonough*, 547 U.S. 573, 579 (2006); and *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011). But the Supreme Court has declined to resolve the question of how to categorize method-of-execution claims generally, *see Nelson*, 541 U.S. at 644, and this Court can find no authority concerning whether a petitioner can simultaneously pursue both habeas and Section 1983 claims, as Mr. Post is doing. It appears that the difference between the two claims centers on two factors: whether the petitioner is challenging the execution protocol as a general matter (and therefore calling into question his very death sentence) or seeking to enjoin the state from executing him in a particular manner; and whether the petitioner concedes that the state ever could execute him in a constitutional manner. Thus, if the petitioner is challenging the lethal-injection procedure in general and does not concede a safer alternative, the claim more properly sounds in habeas. Conversely, if the petitioner is seeking to enjoin just a particular facet of the protocol and concedes that there is an acceptable alternative means so that the execution can proceed, then Section 1983 is the proper vehicle for that claim. *See, e.g., Lynch v. Hudson*, 2011 WL 4537890, at *132 (S.D. Ohio Sept. 28, 2011). Mr. Post's petition contains both general and specific claims, while conceding no safe alternative. But this Court need not parse Mr. Post's petition to determine which claims sound in habeas and which are more suitable to a Section 1983 case. Regardless of whether certain of Mr. Post's claims would be better advanced in his Section 1983 case, the Court finds that his petition generally sounds in habeas, and as such, it must be dismissed in its entirety under Section 2244(b)(1) as second and successive. Mr. Post cannot have it both ways: he cannot assert claims general enough to sound in habeas, but specific enough to invoke a ripeness argument to evade Section 2244(b)'s bar.

## III. Conclusion

Accordingly, Mr. Post's Petition for Writ of Habeas Corpus (ECF No. 174) is hereby dismissed as an unsuccessful attempt to file a second and successive petition, and the Court will transfer the petition to the Sixth Circuit for a determination of whether it meets the requirements of Section 2244(b)(2). Mr. Post's Motion to Proceed In Forma Pauperis and Motion for Summary Judgment (ECF Nos. 175 and 194, respectively) are denied as moot.

IT IS SO ORDERED.

LESLEY WELLS
UNITED STATES DISTRICT JUDGE

Dated: 26 November 2012

11